Our first case for today is number 2017-20532, Craig Washington v. Jose Salazar. Mr. Higgison. Judge, I'm Robert Higgison, for Sergeant Salazar, and may it please the Court. This is a question of whether or not Mr. Washington met his burden to overcome Sergeant Salazar's entitlement to qualified immunity. It's about the arrest that Sergeant Salazar ordered one of the other officers on the scene to do for Mr. Washington. With the information that was available at the time to Sergeant Salazar, in the totality of the circumstances, in the middle of the night, 2 a.m., and Mr. Washington carrying a shotgun, and the report to Sergeant Salazar that Mr. Washington had approached the valet at this club that was still open, and with one of the valets being frightened by this, there was... Pardon my throat. You need to get some water or something? Thank you. Sorry about that, Judge. Please continue. I'm taking some medication that is drying out my mouth. Well, there's all kinds of allergies this time of year. Apologize. I do have a question. Why doesn't the testimony of Sergeant Leon create a fact issue, a material fact issue? Because Sergeant Leon says that he never, as I understand it, that he never told Sergeant Salazar that he was on the property or anything, and he had one that he never heard anything from the valet. And so both of those are factual discrepancies which would deprive, if they are material fact issues, that would deprive us of jurisdiction under Kenny V. Weaver, our en banc precedent. Right. I understand the reference to Sergeant Leon's deposition testimony that you're referring to where he says that he did not tell Sergeant Salazar that Mr. Washington had gotten onto the premises. However, with the other information that had been conveyed to Sergeant Salazar, there was enough from which he could reasonably infer that he had been on the property. Why didn't he charge him? I mean, if he was so investigative about this matter, why did he charge him simply with possession of a shotgun instead of charging him being on licensed premises? It was simply a mistake, Your Honor. He left it to Officer Barnes to complete the charge material, and it was just flat wrong. I just filled out the wrong. I mean, the impression one gets, to tell you the truth, in reading these briefs, is that he was looking for a basis to charge Mr. Washington on. Well, Your Honor, I . . . How did I get that impression? I apologize for interrupting you. No, no, thank you. Well, and I know that that's Mr. Washington's position on this, and I can see how one could conclude that, but that's not the standard that is in play here. As long as there is . . . and even if he was, he would still be covered by qualified immunity. And I'm not conceding that he was, but I can see how one could read these briefs and get to that conclusion. So even if he has evil in his heart, assuming arguendo, it doesn't matter as long as an Well, for purposes of determining summary judgment and qualified immunity, yes, Your Honor. And, I mean, it certainly matters in a bigger picture. If you have an officer running around looking for ways to charge people, and if the officer has evil in his heart, that certainly matters to us. But there's nothing to suggest here that he had evil in his heart. And, yes, I understand . . . Right. I understand, Judge Giannulli. There is something that kind of lurks there. And we wonder if that was really what was going on with Sergeant Salazar. Perhaps it was. I'm not conceding that it was, but perhaps it was. And I hope it doesn't get to the point of what we call evil. But even if he had some ulterior motive for wanting to find some way to arrest Mr. Washington, that's immaterial if there was an objective reason. If the evidence available to him at the time was such that it would give an objectively reasonable officer on the scene reason to believe that there was probable cause for the arrest. What is the undisputed evidence that was available to him at the time? Not disputed by Officer Leon and the other officers, Davis and the other one, But what is the undisputed evidence that supports this proposition you have? That he was called to the scene. That Sergeant Salazar was responding to a dispatch call about someone with a shotgun at this club. That the Harris County Constable, Deputy Kerry Robinson, was there responding to a call about the group of males throwing bottles. And then there was the report that Sergeant Salazar says that I was told that he had approached the valets. Now, that's not disputed if you look carefully at what Sergeant Leon's testimony is. He says that I never told him that he entered the property. And that's this precise testimony. Now, he doesn't say... The valets are right by the sidewalk. Pardon me? The valets are right by the sidewalk, right? Yes, yes. And so that's a little bit different from saying I never told him that he approached the valets. Where does the fearful valet come in? Who said that? Sergeant Leon conveyed that to Sergeant Salazar, and as I recall, he did not dispute that later. They couldn't find the fearful valet, though, and nobody told Sergeant Salazar that this critical witness was in the wind. There were five or six valets, and nobody went looking for who this one was. As you can see from reading the briefs, there were about five or six officers involved here. Is the DA who allegedly approved this also in the wind? Oh, no, we know who that is. We have the name in the record. Nelson. But they're not corroborating Officer Salazar at this point? Oh, well, the Assistant District Attorney Nelson accepted the charges and agreed that that's a felony. But that he told him that ahead of time, that's in the record. I thought it was just Officer Salazar's statement that he was told that, not that... Where in the record is it in there that Nelson told Salazar before the arrest that that was against the law? Another Deputy Robinson also testified. This is the Harris County Constable, Deputy Robinson, also testified that he heard Sergeant Leon say that to Sergeant Salazar, tell him that there was a frightened valet who had been approached. Okay, but I'm talking now about Nelson allegedly telling Salazar that, oh, yeah, we support this charging, because that's what Salazar says he called back and was told that it would support. And I didn't see that in the record, except through the statement of Salazar. Right, but it's not disputed either. Well, it is disputed, I mean, that it happened. Well, only by a speculation on Mr. Washington's part, that he speculates that Sergeant Salazar never called, that he thinks that Sergeant Salazar made all this up. And so what we have on Mr. Washington's part to try to overcome Sergeant Salazar's entitlement to qualified immunity is his suspicion that he had a bad motive and that, based on this bad motive, that he made things up and didn't really, that he lied to the DA, that he didn't really call the DA. Okay, was there anything else in the record? I'm sorry I got us off from your discussion of the undisputed facts. Are there, and you said that he was called out in the middle of the night because people had been throwing bottles and said that there was this bullet was there. What else in the record, if anything, supports, that is undisputed, supports the totality of the circumstances as your client wishes them to be? I think that's pretty much. That's all you got, that he was called out there. He said that he's there. Mr. Washington has a shotgun, that there's a report to him, that officers were responding to a call of a man with a shotgun, that when Sergeant Leon first saw Sergeant Salazar, he said, he's got a shotgun, go stop him, from which one can infer that he's doing something dangerous, that it's not just fine, he's not just walking along. Why should you infer that? Because if you're allowed to walk along, it may be shocking to people, but in Texas you're allowed to walk along with your shotgun. We don't see a lot of that, despite what you may see. But you can walk along with your shotgun, and especially if your house has been imperiled in the middle of the night, you might want to be walking along with your shotgun. Well, I'm not disputing that you can do that or can't do that, but when Officer – and I agree, by the way. I'll concede that you can do that. When Sergeant Salazar got there, the first contact that he had was with Sergeant Leon, who told him, he's got a shotgun, go stop him. Now, what you can refer from is, here's another officer who has more information than I have, and it's an urgent situation based upon Sergeant Leon's report. You know, go stop him. And he didn't deny that he said that. Okay. Did he get his shotgun back? Oh, yes. Right away. Yes, yes. Okay. He was – they let him go home and change clothes. They took him to jail. He was released a few hours later. He got his shotgun back, right. Because we don't have the Second Amendment case on the appeal. No, that's – no, that's not the evidence. The district court said the evidence is conflicting whether Washington was physically on licensed premises and whether Salazar was ever so advised. Is that an incorrect characterization of the record evidence? I think that the first part of that statement is correct. The second part of that statement, I believe, is not. So the correct part is the evidence is conflicting whether Washington was physically on licensed premises. You say that's correct. I think that's correct. I think there is conflicting evidence. I think that this may have been a mistake on Sergeant Salazar's part about a mistake of fact. But qualified immunity covers that. And he may even have had a mistake of law. But, again, qualified immunity would cover that as long as it's reasonable for him to believe that there is some offense that the suspect may have committed. Probable cause – he will have probable cause and be covered by qualified immunity even if he makes a mistake of fact, even if he makes a mistake of law, as long as there is an objective, reasonable basis from which an officer could – any officer could reasonably believe that the suspect had committed any crime. Isn't it odd? We get lots of these cases. You know this. Every sitting we have these kinds of cases with the qualified immunity. But it's extremely unusual to have ones where the fellow officers are the ones that are contradicting the testimony. That's extremely unusual. Indeed. Indeed. But they didn't contradict the heart of it about him approaching the valet. Now, I believe, Judge Willett, that it is uncertain whether Mr. Washington stepped onto the premises or not. Is that a material fact, whether he did or not? It is not a material – it is a material fact as to the viability of a charge against him. But that's not what we're here for. It is not a material fact as to the applicability of qualified immunity in a civil suit. The material part of it is the second part of the sentence that you read from the judge's order below about it being – conflicting whether Sergeant Salazar had reason to believe that he did. And from the overall circumstances, he can believe Sergeant Salazar could reasonably conclude that, well, he went up there to the valets. The valets are on the parking lot. The parking lot is part of the premises. And he committed a crime. And two of the other officers also agree that this would be a crime. Thank you. You've saved time for rebuttal. Yes, sir. May it please the Court. Mr. Higginson, I first want to attempt to answer some of the very important questions posed by Your Honor. First of all, there is really no dispute in the evidence about what Sergeant Salazar knew at the time. Lieutenant Leon, then Sergeant Leon, was very clear. He was absolutely adamant. Page 27 through 28 of Leon's deposition says, All I told Salazar was that there's a man walking down the street with a shotgun, period. End of story. Now, the qualified immunity criteria is judged by what the officer knew at the time. There is no dispute but that all he knew at the time was that there was a man walking down the street with a shotgun. Now, this Court, the other issue, was the valet afraid? Sergeant Salazar was never told that the valet was in fear, that the valet was afraid. The evidence is that Mr. Washington stopped and had a conversation with the valet. The valet stand was on the sidewalk. And he conversed with the valet about who he was looking for, why he was looking for. That conversation was, the valet agreed with Mr. Washington that that's terrible but they hadn't seen anybody. And at that point, Washington's walking back to his house. The problem with this case is that Salazar is in a box from which he cannot escape. This Court, in its opinion, in Zarnow v. City of Wichita Falls, that case is cited by the appellant in their brief. This Court gives us the criteria, the guidance, clarification of how to rebut qualified immunity. First thing we've got to be able to show is that rights were violated. And that means in this context that there was no probable cause to arrest Mr. Washington. You can take either of the two scenarios posed by the appellant as an excuse for arresting him. They both fail. What the Court, I want to understand, is that Mr. Washington was actually arrested and charged for the unlawful carrying of a handgun under circumstances where no one thought, suspected, had any reason to believe he had a handgun. Everybody knew he had a shotgun. But even if he had a handgun, he had a valid permit to carry it. So that eliminates that basis. Now, if you go to did he set foot on licensed property, they can't get there that way either. They cite the Texas Alcohol and Beverage Code provision, that being Section 11.03a. Now, that provision defines premises as including the parking lot. But the problem is that that provision of the Texas Alcohol and Beverage Code does not apply to the carrying to the possession of firearms on licensed premises. The only place in Texas that you get a prohibition regulation guidance about carrying firearms is in the Texas Penal Code. Now, the Texas Penal Code, Section 46.03c, says this about the premises on which firearms are not prevented. First of all, it defines premises as meaning a building or a portion thereof. I think, counsel, they concede that this is not illegal under the Penal Code, don't they? They have never told me that, and when we argued this case at When you proceed, but it's If that point has been conceded, I'll move along. But at the summary judgment hearing, they argued that point vociferously, and the judge had to wrestle with which one of these premises definitions apply. But I'll move on. You can use your time however you think best. If you think it's not conceded, then please carry on on that. If the court thinks it's conceded, then I must think it's conceded. But the point being, sidewalks, parking lots, public or private parking garage for purposes of possession of firearms on premises licensed to sell alcohol is not illegal. You see, if Salazar intended to arrest him for a crime that does not exist and had not existed in 18 years, that satisfies the first prong of our burden to defeat qualified immunity. The first prong is, was the arrest illegal? Was it without probable cause? Well, it was because there was no factual basis, and if you look at the totality of the circumstances known to Salazar, there was no basis. Now, we do allow the arresting author to make a mistake. But in this case, this court's opinion in Zanara tells us that the mistake has to be a reasonable mistake. So this court in Zanara asked us to look at, was that area of the law unsettled? Was it an open question? That's language from the Supreme Court's opinion in Ashcroft v. LZ. Well, the statute that says it's okay to set foot on a parking lot is clear. It had been on the books 18 years when this happened. So that's not an issue. Why did he do this? So you think it's an unreasonable mistake as a matter of law? Absolutely, absolutely. And any veteran, senior, supervising officer who has been on the force 23 years should know that this statute, which had been on the books 18 years. What persuaded the district attorney to authorize the arrest? Thank you for raising that question. We are convinced that that call was never placed. There ain't a district attorney in Harris County that would tell Officer Salazar that setting foot on a parking lot with a shotgun is a second-degree felony. Salazar has never offered the name of that district attorney? In deposition, Salazar said he did not know the name. He surmised that it might have been Assistant DA Nelson. We ask, the reason for the requirement in Harris County to call the district attorney is because we don't presume that the officers on the street know everything there is to know about the law, so they have to call the DA to clear the charge. Mr. Washington had been cleared when Salazar got to the scene and was told by Officer Clopton that this is a politician that we've been having trouble with in the past, and I need him arrested. At that point, Salazar went to Officers Barner and David and said, I want him in jail. Barner and David, in compliance with their duty, said, in jail for what? What did he do whereupon Salazar said, I want him in jail because I said so? That's the testimony of Officer David, a 26-year veteran with the police department. Each and every officer, the Harris County... At what point did that conversation occur, before or after he had talked to the DA the last time? That conversation occurred after he talked to Clopton and after he walked away with his cell phone pretending to talk to the DA. There are records kept and maintained when these officers on the street call the DA. This call does not exist in the record. So we believe... Is that in the record, the records from the DA? I can tell you that there is no evidence that that call was ever made. But it took place. But is the record of its absence in a place it would normally appear in the record? Yes. So the phone records are in the evidence. Well, it's not a phone record per se. The DA has notations that they make when calls are made and information is given. So that's not in the record or it is in the record? It is not there. That call does not exist. The call is not there, but I'm saying is the record that shows that the call is not there in the record? It is not. Okay. So we have the motivation to falsify and fabricate the arrest coming from Officer Clopton. We have every officer on the scene who says this was a bad arrest, there was no probable cause, there's no basis. The appellant points out that the arrest may have resulted from the fact that Duvalier was afraid, was frightened. But if you look at the testimony of Officer Leon, everything that Officer Salazar based his decision to arrest on comes from Leon. It didn't come from anywhere else. And Leon testifies that he never told him, never told Salazar that Duvalier was scared. All he said was there's a guy walking down the street with a shotgun. That's the end of the story. The second prong of the Czar and I burden that we must carry to rebut qualified immunity is the mistake that he made reasonable. And we know from Ashcross v. Al-Qaeda that the officer can get away with making a mistake if he's dealing in an unsettled area of the law, if the law is not clearly established. He can't say that here because the law is very well established. And there is no conclusion here but that this arrest was a result of vindictiveness, revenge, and retaliation for this excellent criminal defense lawyer who has toiled for almost a century fighting for the rights of the criminally accused. And yes, he has had many run-ins with the Houston Police Department during the course of that career. This is why this man was arrested. This is why this man was charged. This is why the charges were dismissed. And that is all, Your Honors, that this case is about. I think we have your argument, Counsel. Thank you. Thank you, Your Honor. What evidence is there that supports the claim of Salazar that he contacted the DA on two occasions that evening? There is no evidence to support that. It's his testimony, but it's uncontradicted. Well, I guess so, but it's also self-serving. Now, what about the DA records that we were told about here? To your knowledge, is that supported, that there's no record of the conversation ever having occurred? Well, there's nothing in the record, to my knowledge. My recollection of what's in the record, there's nothing there about the— Are there records kept with respect to other calls that arresting officers make to the district attorney in similar situations? Your Honor, I don't know if there are or not. It seems like there would be, but I don't know if there are, and they're not there in this case. I mean, there's nothing to show outside of Sergeant Salazar's testimony that he made this phone call. There's nothing to show that he did. Now— You say that it's uncontradicted. I thought one of the officers was at Leon who said that the call was not made. I don't know that Leon said that, and I'd have to read that very closely again. But Leon would not have been in a position to have known that unless he was right with Sergeant Salazar. It seems like you've got a dispute of a material fact, especially in terms of whether his conduct was reasonable. Well, if Sergeant Leon testified directly that he was with Sergeant Salazar the entire time and he knows that Sergeant Salazar never called the DA, then that would be a material fact. But there's also an issue because it has to be objectively reasonable that he believed—that he erroneously believed the law to be— that you can be on the licensed premises with a shotgun, right? Judge, I spent a good bit of time researching that issue, and it's just unclear to me. I believe that the DAVC section that I cited, it says no weapons can be there. Well, Judge Smith analyzes it for us. I don't think that's correct. Okay. Well, I just—okay. So you don't concede that. But look, assuming argue endo that you can have a shotgun on a licensed premises and that that's been the law for many years, he has to have an objectively reasonable belief that the law is to the contrary. Yes. And it can't just be that he thinks it. And you're trying to get your objective reasonableness, the fact that he was told by this DA, so you're offering it for the truth of the matter, not just for his view. And it's hearsay if you don't have the DA, so you're offering it for the truth of the matter, that the DA also believed that. And so we can't take the DA's view for the truth of the matter to show that he's objectively reasonable. We just have to decide on our own as a matter of law whether that's objectively reasonable, even assuming that conversation took place without anything else in the record. Well, there is other support. Just exclude the DA then, and we look at the deposition testimony of Constable Deputy Kerry Robinson, who agreed that it was a felony to have a shotgun on any premises, any licensed premises, and who may also have been mistaken about this. And the fact that Sergeant Leon was concerned about this at the beginning, whatever he said in his deposition, now, you know, fine, so he doesn't say in his deposition, but he isn't denying that he said that man's got a shotgun, go stop him. But I just wanted to say... Did he say go stop him? Go stop him, yes. And in page 17 of my brief, I quote a few, a short section there from the deputy, Constable Deputy Robinson, where he says that all I know is they were on the property, and so Robinson believed that he was on the property from information he had, and he also said that it's, he also believed that it was a felony. And I think that maybe, my fix on TABC, as I analyzed it in my brief, is that it precludes weapons, including shotguns. It has an exception for licensed handguns. And I've run out of time. Thank you. Thank you very much. We have your argument. The case is submitted.